ANGEL MERCADO, B54286,

         Petitioner,

         v.

VICTOR CALLOWAY, Warden,
Danville Correctional Center,

         Respondent.

No. 14 C 2539

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

Angel Mercado was convicted after a jury trial of aggravated discharge of a firearm and unlawful use of a weapon by a felon. *See* R. 6 at 2. He is serving concurrent prison terms of 20 and 12 years at the Danville Correctional Center in Danville, Illinois, where he is in the custody of Warden Christine Brannon.[1] *See id.* Mercado seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* R. 1; R. 6. The Warden has answered the petition by seeking its dismissal. R. 21. For the following reasons, Mercado's petition is dismissed and the Court declines to issue a certificate of appealability.

---

[1] Dan Reardon was the Warden of Danville Correctional Center when Mercado filed his petition. *See* R. 6. Victor Calloway is now Danville's Warden where Mercado still resides. *See* the Danville webpage, http://www.illinois.gov/idoc/facilities/pages/ danvillecorrectionalcenter.aspx (last visited Dec. 15, 2016). Accordingly, Warden Calloway is substituted as the proper respondent. *See* Rule 2(a) of the Rules Governing Section 2254 Cases; *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("[T]he proper respondent is the warden of the facility where the prisoner is being held."); *see also Bridges v. Chambers*, 425 F.3d 1048, 1049 (7th Cir. 2005).

## Background

### I.     Facts

Mercado was tried before a jury along with his codefendant Robert Cantoral—who was Mercado's girlfriend's brother—for firing a gun from a moving car at another moving car. Mercado was in the front passenger seat of a car driven and owned by Cantoral, when they pulled up at a stop light next to a car containing four other men. The four men testified that Cantoral flashed a gang sign at them, to which one of the four men responded with a middle finger. Two of the four men admitted to being former gang members. The four men testified that when the light turned green Cantoral sped ahead of them, and that Mercado leaned out the front passenger window and fired two gunshots at their car. Mercado himself admitted that he shot at the car containing the four men. Shortly thereafter, the four men found a police officer and reported the incident. The police located Cantoral and Mercado in their car, and recovered a gun in a hidden compartment within the car. All of these facts were in evidence before the jury.

Prior to trial, Mercado's attorney notified the trial court that Mercado intended to argue self-defense because he thought he saw the four men searching through their car as if they were looking for a gun. Mercado's attorney also informed the court that Mercado intended to testify that he believed Cantoral had the same fear. Mercado's attorney further told the court that he surmised, based on Cantoral's intent to raise a sufficiency of the evidence defense, that Cantoral intended to testify that he did not share Mercado's fear of the four men, thus

contradicting Mercado's anticipated testimony. For this reason, Mercado's attorney argued that Cantoral's defense was antagonistic to Mercado's self-defense theory. He therefore sought a severance of Mercado's trial from Cantoral's. The trial court denied the motion to sever, reasoning (1) that is was sheer speculation what Cantoral would testify to, and (2) even if Cantoral did testify that he did not share Mercado's fear, his testimony would simply be that of an eyewitness and would not raise an antagonistic defense that would warrant a separate trial. *See* R. 22-6 at 16 (K-7:14-23).

Later during trial, it was Cantoral's attorney who brought a motion before the trial court touching on the same issue. Cantoral's attorney told the trial court that he believed, based on statements by Mercado's attorney, that Mercado was going to testify not only that Cantoral was afraid of the four men in the other car, but that the gun Mercado used belonged to Cantoral, and that Cantoral directed Mercado to get the gun and shoot at the four men. R. 22-6 at 6 (A-4:6-12). Cantoral's attorney argued that this was a change in Mercado's defense strategy that should not be permitted at that late stage of the trial. In response to Cantoral's attorney's argument, Mercado's attorney clarified how he expected Mercado to testify:

> We are not going to say that Mr. Cantoral was angry at the other car. . . . The situation we are going to describe is one where the occupants of Mr. Cantoral's vehicle are in fear for their lives and that there was an interaction between Mercado and Cantoral in response to that and Mr. Mercado did what Mr. Mercado did in fear of his life and the other occupant of the vehicle, which is Mr. Cantoral.

R. 22-6 at 8-9 (A-6:22–A-7:10). The trial court's response to the motion by Cantoral's attorney was to tell Mercado's attorney that he should have described Mercado's potential testimony in greater detail prior to trial when he moved for a severance, because

> that's at the very heart of the antagonism now, isn't it? Here we are in the middle of a jury trial and all of a sudden for the first time in the middle of a jury trial the antagonism has become apparent.

R. 22-6 at 10 (A-8:19-24). At this point, the Assistant State's Attorney interjected, pointing out that the "real issue" was not about "any words exchanged between [Mercado and Cantoral] but that there has been a representation that [Mercado] is going to get up and [testify that] he got the gun from [Cantoral]." R. 22-6 at 11 (A-9:5-10). The Assistant State's Attorney argued that Mercado had the opportunity to raise this particular alleged fact when he moved for severance before the trial, and because he failed to do so, he should "be estopped from making any representations as to where he received that particular firearm." R. 22-6 at 12 (A-10:15-17). Cantoral's attorney agreed that a restriction on Mercado's testimony was an appropriate sanction for the late notice, and that a mistrial would be necessary if such a restriction on Mercado's testimony was impermissible. In support of this motion for sanctions or, in the alternative, a mistrial, Cantoral's attorney argued that

> the antagonism comes from [Mercado] indicating that [Cantoral] had the gun in the car and was responsible for getting the gun into [Mercado's] hands, and that is an antagonism that is in fact enormously prejudicial and I

4

think will eventually not allow this case to be tried fairly .
. . .

R. 22-6 at 12-13 (A-10:22–A-11:4). The trial court declined to issue a preemptory ruling on Cantoral's motion, stating that he would decide the issue when "Mercado actually testifies." R. 22-6 at 13-14 (A-11:24–A-12:1).

The issue of Mercado's testimony was presented to the trial court again after the close of the state's case and immediately before Mercado took the witness stand. The Assistant State's Attorney again sought to exclude Mercado's anticipated testimony concerning the source of the gun.

> [T]he origin of the gun [has] no impact or is not relevant to the charges at issue. The self-defense . . . is only applicable to [the] charge [of aggravated discharge of a firearm]. Makes no difference where he got the gun in his self-defense claim. Whether or not he says it appeared in his hand, the fact that he used it to shoot [at] someone makes no difference whatsoever as to that particular charge. . . . We would ask that [Mercado] be limited to simply stating that he grabbed the gun and not stating from where he grabbed [it].

R. 22-6 at 44-45 (A-42:16–A-43:2, A-43:14-17). In response, Mercado's attorney argued that Mercado should be permitted

> to testify that . . . something happens between Mr. Cantoral and the vehicle [with the four men]. There is this discussion between Mr. Cantoral and Mr. Mercado. . . . The car [with the four men] follows them. There is continued discussion between Mr. Cantoral and Mr. Mercado. Mr. Mercado is told that there is a gun in the car, [and] where it is. He gets it. Then he is told that the vehicle [with the four men] is now coming up on Mr. Mercado's side [of the car]. He displays the gun. He fires it in the direction of the pavement. Then he puts the gun back where it was recovered by the police, a sealed compartment located in Mr. Cantoral's vehicle.

R. 22-6 at 47-48 (A-45:7–A-46:2). The trial court then reconfirmed with Mercado's attorney what Mercado's testimony would be, and in the course of that discussion eventually had the following exchange with the attorneys for Mercado and Cantoral:

| | |
|---|---|
| The Court: | And then there is another conversation, of course, about— |
| Mercado's Attorney: | I will say it is a continuing conversation. |
| The Court: | The contents of which is not coming into evidence, but then after that conversation [Mercado] goes and retrieves a gun from the car? |
| Mercado's Attorney: | Yes. |
| Cantoral's Attorney: | He says [Mercado] is going to say [Cantoral] told him there was a gun in the car, where to get it from and that's where he got it from. |
| The Court: | That's hearsay. How is that coming in? |
| Cantoral's Attorney: | He was going to say he was directed to get the gun. |
| The Court: | How could he say that? How can he put that conversation into evidence? |
| Cantoral's Attorney: | You are right. The point I obviously am making is that when [Cantoral] is driving away, he certainly couldn't have put that gun in that right hand wherever the hell that gun was put back there. He can't be driving the car and go to the back of an SUV. It is impossible. So I am just saying— |
| Mercado's Attorney: | We are saying we put it back. |

| | |
|---|---|
| Cantoral's Attorney: | Okay. Fine. I still renew my motion for a mistrial. It is surprise testimony. |
| The Court: | Make the motion at the appropriate time. |

R. 22-6 at 48-50 (A-46:21–A-48:7). As indicated in the above excerpt, the trial court believed that Mercado's proposed testimony about his conversation with Cantoral was inadmissible hearsay. Nevertheless, the trial court denied the Assistant State's Attorney's motion insofar as it sought to bar Mercado from testifying about where he got the gun (as opposed to conversations he had with Cantoral about the gun). *Id.* Mercado took the stand immediately after this exchange.

Midway through Mercado's testimony the following exchange occurred:

| | |
|---|---|
| Mercado: | I noticed [Cantoral] and the other car [with the four men] exchanging words. Not necessarily gangbanging words, but they was exchanging words. |
| Mercado's Attorney: | What happened after that? |
| Mercado: | He asked me what should I do—what should we do. I told him— |
| Cantoral's Attorney: | Objection. |
| The Court: | The objection is sustained. |
| Mercado's Attorney: | What did you do? |
| Mercado: | I asked [Cantoral] to— |
| The Court: | The objection is sustained. |
| Mercado: | I am sorry. |
| Mercado's Attorney: | I don't want you to say anything that [Cantoral] may have said to you. |

| The Court: | Or anything that you may have said to him. |

R. 22-6 at 56-57 (A-54:22–A-55:18). Mercado proceeded to testify about how the car with the four men followed them and he saw the four men moving in such a way that made him think that they were searching for a gun in their car. His testimony continued as follows:

| Mercado: | [W]e were both excited in the car. We both got real excited and thought that they were trying to retrieve for a gun [sic]. |
| Cantoral's Attorney: | Objection to that, Judge. |
| Mercado's Attorney: | You can't tell us what [Cantoral] was thinking. |
| The Court: | I would like to see the lawyers in side bar, please. The objection is sustained. The jury is instructed to disregard that last statement by this Defendant. |
| [At Sidebar] | |
| The Court: | This is a problem that is not of my making. Mr. Jordan [Mercado's Attorney], I realize that you are trying to do the right thing here, but I may have to step in after every question and tell [Mercado] to answer only the question that he's asked. If I have to do that, I will. |
| | I am not going to keep making objections. I know this isn't a problem of your making, but you need to participate in this trial as well as [Cantoral's Attorney]. Everybody needs to be very cautious here because this problem that has been presented in the middle of this trial, I am not going to let it get out of hand and cause a reversal if there is a conviction. |
| | So everybody stay on their toes, and I will do my best not to distract from your |

> client's testimony. I realize that he wants to
> say things that are non-responsive to the
> questions you are asking him.
> Let's go back out.

R. 22-6 at 58-60 (A-56:17–A-58:7). Before the jury was brought back in, the trial court spoke to both defendants. The trial court told Mercado that he could not testify to "what [Cantoral] was thinking," or what Cantoral said to him, "[b]ecause that's hearsay." R. 22-6 at 61 (A-59:13-24). The trial court also told Cantoral that he could not testify about his conversations with Mercado. R. 22-6 at 62 (A-60:19-21). The trial court concluded the discussion outside the presence of the jury by ruling that "there is nothing antagonistic about the situation so far." R. 22-6 at 62 (A-60:15-18).

Mercado then proceeded to testify that he found the gun in a hidden compartment in Cantoral's car. R. 22-6 at 63 (A-61:14-24). He admitted firing two shots toward the car with the four men. R. 22-6 at 68 (A-66:6-8). He also admitted that he never actually saw any of the four men with a gun, and that he is a former gang member.

Cantoral testified that he did not have a gun in the car that night. R. 22-6 at 92 (A-90:12-20). He also testified that he has never been a gang member, and he denied flashing a gang sign towards the four men. Indeed, Cantoral denied noticing or having any interaction at all with the four men in the other car prior to the shooting. *Id.* at 96 (A-94:9-16). Rather, Cantoral testified that at some point as he was driving he heard gun shots and then noticed Mercado coming back into the car

from leaning out the window. At that point Cantoral also saw a gun in Mercado's hand. *Id.* at 96-97 (A-94:23–A-95:11).

The trial court instructed the jury regarding self-defense using Illinois pattern instruction 24-25.06, which provides, "A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against the imminent use of unlawful force. However a person is justified in the use of force which is intended or likely to cause death of great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another." Cantoral was acquitted of aggravated discharge of a firearm, while Mercado was convicted of aggravated discharge of a firearm and unlawful use of a weapon by a felon.

## II. Procedural History

Mercado filed an appeal arguing that (1) his trial counsel was ineffective for failing to ensure that he and Cantoral were tried separately; and (2) the trial court erred by (i) not granting a severance on the pretrial motion; (ii) failing to sever the trials when antagonistic defenses purportedly arose during trial; and (iii) limiting Mercado's testimony about Cantoral's statements. The appellate court denied his appeal. With respect to the pretrial motion for severance, the appellate court held:

> Based on the pretrial representations, we find that the trial court did not abuse its discretion in denying the motion for severance. Defendant's attorney did not offer any evidence from discovery to establish how Cantoral's testimony would incriminate defendant nor how a reasonable defense would be antagonistic to defendant's

> claim of self-defense. The trial court considered the arguments and tried to envision the possible scenario that defense counsel raised before declining to find antagonism. This decision was not an abuse of discretion.

*People v. Mercado*, 921 N.E.2d 756, 763 (Ill. App. Ct. 1st Dist. 2010). With respect to the trial court's ruling during trial restricting Mercado's testimony, and failure to sever when antagonistic defenses purportedly arose during trial, the appellate court also held that

> [Mercado's] intended testimony about his interactions with Cantoral should [not] have been admitted as showing the effect of Cantoral's statements on defendant's action. . . . Defendant's attorney stated that defendant planned to state that Cantoral told him where the gun was and to retrieve it. These statements were intended to establish where defendant got the gun, i.e., the truth of the matter asserted. Additionally, defendant does not argue that the proposed testimony fits within any hearsay exception nor do we find any exception to be applicable in this case. Therefore, even if severance had been granted, this testimony would not have been admissible. Accordingly, the testimony was inadmissible hearsay and properly excluded.
>
> Further, the trial court did not abuse its discretion in failing to grant severance during trial. The defenses presented by defendant and Cantoral were not antagonistic, but merely contradictory. Cantoral denied any involvement in the circumstances leading up to the shooting. He did not inculpate defendant while exculpating himself as defendant had already admitted to the shooting. Defendant contended at trial that he reasonably believed that he feared for his life, causing him to fire the gun in self-defense. As we previously pointed out "[t]he 'mere contradiction in testimony of two defendants as to what happened on the day of the crime does not render defenses sufficiently antagonistic to constitute reversible error.'" . . . Here, the defendants' testimony was contradictory, not antagonistic. Accordingly, the trial court did not breach its duty [to] grant a severance during trial.

*Id.* at 765-66 (internal citation omitted). Mercado raised the same two issues in a petition for leave to appeal before the Illinois Supreme Court, which was denied. Mercado also filed a petition for a writ of certiorari with the United States Supreme Court, which was denied.

After his direct appeal, Mercado filed a pro se postconviction petition with the Cook County Circuit Court, arguing that his appellate counsel was ineffective for failing (1) to argue that his trial counsel was ineffective for failing to ensure that the trial court questioned the venire in accordance with Illinois Supreme Court Rule 431(b); (2) to argue that his trial counsel was ineffective for failing to ensure that the trial court properly questioned the entire venire about potential gang bias; and (3) to challenge his conviction and sentence for unlawful use of a weapon by a felon, a lesser-included offense of aggravated discharge of a firearm. The Circuit Court denied his petition. Mercado then filed a pro se appeal of that denial arguing that his trial and appellate counsel were ineffective with respect to the issue of questioning the venire regarding gang bias. The appellate court rejected his appeal. Mercado filed a petition for leave to appeal to the Illinois Supreme Court arguing the ineffectiveness of his appellate counsel, which was also denied.

Mercado's petition to this Court makes the following arguments:

> (1) the trial court erred by denying Mercado's pre-trial severance motion;
>
> (2) the trial court erred by not granting a severance when the issue of antagonistic defenses arose during trial;

(3) the trial court erred by prohibiting Mercado from testifying about Cantoral's statements;

(4) trial counsel was ineffective for "fail[ing] to support his pretrial motion for severance with specific details showing antagonism";

(5) trial counsel was ineffective for failing to request a mistrial when the issue of antagonistic defenses arose during trial;

(6) trial counsel was ineffective in objecting to the trial court's ruling prohibiting Mercado's testimony about Cantoral's statements;

(7) appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to ensure that the entire venire was questioned about potential gang bias.

The Warden does not argue that Mercado's petition is untimely.

## Analysis

## I.     Severance

### A.     Trial Court

#### 1.     Procedural Default

Mercado argues that the trial court should have granted his pretrial motion to sever his trial from Cantoral's, and should have realized during trial that their defenses were antagonistic and required severance. To the extent that Mercado argues that the trial court violated state law in making these rulings, that claim is not cognizable on habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas

review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004) ("[E]rrors of state law in and of themselves are not cognizable on habeas review. The remedial power of a federal habeas court is limited to violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene.").

However, if the "petition[er] draws enough of a connection between his rights to due process and the trial court's (alleged) . . . errors," this can "render [the petitioner's] claim cognizable on habeas review." *Perruquet,* 390 F.3d at 512. In his petition, Mercado invokes his "constitutional right" to a "fair trial," arguing that his trial was unfair because he was tried together with Cantoral even though "their defenses were antagonistic." R. 6 at 22. But it is not enough for Mercado to invoke his constitutional rights in his habeas petition in this Court. To properly raise any issue on habeas review, he must have "fairly presented" that issue through one complete round of state court review. *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014). The Court "must consider whether the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis." *Whatley v. Zatecky*, 833 F.3d 762, 771 (7th Cir. 2016). The Seventh Circuit has "set forth four factors to consider in determining whether a petitioner has avoided default: (1) whether the petitioner relied on federal cases that engage in a constitutional analysis; (2) whether the petitioner relied on state

cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; or (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." *Id.* at 771. "All four factors need not be present to avoid default, and conversely, a single factor alone does not automatically avoid default." *Id.* Rather, the Court "must consider the specific circumstances of each case." *Id.*

Mercado argues that he satisfied this standard by "alert[ing] the [state courts] to the federal nature of his claim," in that he "consistently presented [his] claims] in a federal and state law nature." R. 24 at 4. The Court disagrees. Mercado did not cite federal cases, or state cases applying a constitutional analysis, in his state court briefing. Additionally, Mercado did not raise a "specific constitutional right," or "a pattern or facts that is well within the mainstream of constitutional litigation," as there is no constitutional right to a solo trial. *See Bishop v. Lemke*, 2013 WL 6577296, at *4 (N.D. Ill. Dec. 12, 2013); *see also Zafiro v. United States*, 506 U.S. 534, 538 (1993) ("Mutually antagonistic defenses are not prejudicial per se."). Moreover, Mercado's argument on appeal in the state court focused on the trial court's errors in applying state law relevant to severing trials. His argument did not even touch on broader principles of constitutional due process. Mercado made only a passing reference in his appellate brief to a "fair trial" in arguing that "[b]ecause [his] and Cantoral's defenses were antagonistic, [his trial counsel] had an obligation to ensure that the cases were severed so that Mercado would receive a

fair trial." R. 22-1 at 23. But the Seventh Circuit has cautioned against the "special danger" of claims made in state court that "may well present the echo of a federal claim while still not alerting the state court to the federal nature of the claim." *Verdin v. O'Leary*, 972 F.2d 1467, 1475 (7th Cir. 1992); *see also id.* ("A federal constitutional claim may be 'inherent' in the facts, but not recognizable as such without further elaboration."). For this reason "bare allegations that the defendant was not given a fair trial," or "[v]ague or cursory references to 'due process'" are generally insufficient to fairly present a due process issue to state courts. *Id.* Rather, the "petitioner must have placed both the operative facts and the controlling legal principles before the state courts," and a "mere 'passing reference' to a constitutional issue certainly does not suffice." *Chambers v. McCaughtry*, 264 F.3d 732, 738 (7th Cir. 2001). Mercado's passing reference to a "fair trial" in his state court appeal briefs was insufficient to preserve the issue of constitutional due process for this Court, so it is procedurally defaulted.

### 2. Merits

Even if Mercado had properly raised this issue through a complete round of state court review, it fails on the merits. For Mercado's claim to be meritorious he would have to show that the trial court's decisions were (i) "contrary to," (ii) "an unreasonable application of," (iii) an unreasonable extension of, or (iv) an unreasonable refusal to extend, clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); *Kubsch v. Neal*, 838 F.3d 845, 859 (7th Cir. 2016). A

defendant's claim that his trial should have been severed from his co-defendant's trial generally does not implicate federal constitutional rights. But the due process right to a fair trial can be implicated if "the state court committed an error so serious as to render it likely that an innocent person was convicted." *Perruquet*, 390 F.3d at 510. Similarly, with respect to severance in particular, the Supreme Court has held that severance is only necessary "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. The Supreme Court continued,

> Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. . . . Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk or prejudice. *Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial.*

*Id.* (emphasis added).

Although not entirely clear, Mercado's arguments could be construed as contending that the trial court's refusal to sever his trial from Cantoral's led the trial court to erroneously restrict his testimony. If true, this potentially could be a circumstance that would raise an issue concerning exculpatory evidence as described in the last sentence of the above-quoted passage from *Zafiro*. If that is

Mercado's argument, however, he is mistaken. The circumstances of Mercado's trial do not rise to such a level.

First, the trial court's pretrial ruling was completely unrelated to the later dispute regarding restriction of Mercado's testimony, and did not create any unfair prejudice at all. The pretrial ruling only concerned whether Mercado was unfairly prejudiced by the jury hearing Cantoral's testimony that he was not aware of any confrontation with the four men in the other car until he realized that Mercado had shot at them. As the trial court pointed out, even if Mercado had been tried apart from Cantoral, Cantoral still could have been a witness at his trial (although he could have properly refused to testify if his trial had not yet occurred). Thus, there was no reason to sever their trials simply because Cantoral's story conflicted with Mercado's.

Of course, the heart of Mercado's claim is that his trial became unfair when the trial court restricted *his* testimony regarding Cantoral's statements, instead of severing their trials. There is at least a colorable argument that if federal evidentiary rules were to apply, Mercado's testimony regarding what Cantoral said to him was admissible under hearsay exceptions for present sense impressions, excited utterances, statements regarding Cantoral's state of mind, and/or statements offered for the non-hearsay purpose regarding their effect on Mercado's state of mind (and the Court will address below whether the potentially improper hearsay ruling caused Mercado to suffer an unfair trial). But in this case, this evidentiary question at issue is not relevant to whether a severance was necessary

to ensure the fairness of Mercado's trial. As the state appellate court pointed out, if the testimony in question was hearsay, Mercado would not have been permitted to give that testimony even if he had been tried alone. Mercado's argument is based on the faulty premise that he would have been permitted to offer his hearsay testimony if he had been tried apart from Cantoral. This premise conflates hearsay with prejudice to Cantoral. If the trial court had excluded Mercado's testimony based on a finding that it was unfairly prejudicial to Cantoral, then severance would have solved the problem because prejudice to Cantoral would not have been a concern in a trial of Mercado alone. By contrast, however, prejudice to Cantoral is not relevant to a hearsay ruling. Rather, hearsay is hearsay no matter who is on trial. Since the trial court excluded Mercado's testimony because it was hearsay, it would not have been available to him even if his trial had been severed from Cantoral's. For this reason, the issue of severance is unrelated to the issue regarding exclusion of part of Mercado's testimony. And as discussed, the simple fact that Mercado and Cantoral gave contradictory testimony about what happened on the night in question is not a basis to sever their trials. Thus, the trial court's failure to sever the trials in light of its decision to bar Mercado's testimony regarding Cantoral's statements on hearsay grounds did not unfairly prejudice Mercado.

## B.    Trial Counsel

Mercado argues that his trial counsel was ineffective in arguing the motion for severance before trial and in failing to move for severance during trial. On habeas review, a petitioner claiming ineffective assistance must show that the state

court unreasonably applied the standard for ineffective assistance set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* standard asks (1) whether counsel provided representation that "fell below an objective standard of reasonableness," and (2) whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. Unlike a straightforward application of *Strickland*, on habeas review "the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Since under habeas review the question is whether the state court reasonably applied *Strickland's* deferential standard, the Supreme Court has described review of an ineffective assistance of counsel claim on habeas review as "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

As discussed above, no meritorious argument for severance existed. To the extent trial counsel failed to zealously argue for severance, either before or during trial, no prejudice arose from this failure. In these circumstances, it was entirely reasonable for the state courts to find that trial counsel's performance met *Strickland's* standard.

## II. Testimony Restrictions

### A. Trial Court

#### 1. Procedural Default

Mercado argues that the trial court erred in barring his testimony about Cantoral's statements, and that this decision prejudiced Mercado's ability to present a self-defense theory. Once again, to the extent Mercado argues that the trial court violated state law in making this decision, it is not cognizable on habeas review based on the authority noted above. *See Estelle,* 502 U.S. at 67-68.

As with the severance issue, Mercado argues that his claim regarding the trial court's "ruling limiting [his] testimony" is cognizable on habeas review because the ruling "infringed on his constitutional rights to a fair trial, and to present a defense." R. 24 at 2. Just as with the severance issue, however, Mercado never alerted the state courts to the constitutional dimension of his claim that the trial court erred in limiting his testimony about Cantoral's statements. He never argued that the trial court's alleged error deprived him of a fair trial, and he cited only Illinois case law in support of his argument. Thus, Mercado failed to raise this issue through one complete round of state court proceedings so it is procedurally defaulted.

#### 2. Merits

Even if this issue was properly preserved for this Court on habeas review, it is not meritorious. As noted above, "[d]ue process does entitle a defendant to a fair trial; but only if the state court committed an error so serious as to render it likely

that an innocent person was convicted can the error be described as a deprivation of due process." *Perruquet*, 390 F.3d at 510. Even if the trial court's decision to prohibit Mercado from testifying about Cantoral's statements was erroneous, that error did not create an unfair trial because Mercado's admission that he shot at the four men was more than sufficient evidence to fairly convict him of aggravated discharge of a firearm and unlawful use of a weapon by a felon. Mercado offered no evidence other than his own testimony that he was justified in shooting at the four men. Therefore, the question of self-defense turned on the jury's evaluation of Mercado's credibility in light of the testimony from the four men in the other car and Cantoral that served to impeach Mercado's story. Contrary to Mercado's testimony, the four men denied being the aggressors, and Cantoral denied being aware of any dispute until it was over. The jury decided not to believe Mercado, and in light of all the other evidence, the exclusion of Mercado's testimony that Cantoral was afraid of the four men and directed him to retrieve the gun does not necessarily call the jury's decision into question.

It is true that Mercado's testimony about Cantoral's statements could have served to impeach Cantoral's testimony that he did not share Mercado's fear of the four men. This impeachment might have enhanced Mercado's credibility relative to Cantoral's. But it would not have materially changed the evidentiary landscape because there was already evidence in the record calling Cantoral's credibility into question. Cantoral testified that the gun was not his, yet the police testified they found the gun in a hidden compartment in Cantoral's car. Cantoral testified that he

was oblivious to any dispute with the four men, yet the four men testified he started the dispute by flashing a gang sign at them. Indeed, contrary to Cantoral's testimony, it is highly implausible that Mercado could have retrieved a gun and leaned out the car window preparing to shoot at the other car without Cantoral noticing. Due to the evidence impeaching Cantoral's credibility and the inherent implausibility in his testimony, the Court concludes that the additional testimony Mercado hoped to offer in order to impeach Cantoral further would not have affected the jury's decision.

Additionally, the testimony from the police and the four men corroborated Mercado's testimony that Cantoral exchanged angry words with the four men, and that he retrieved the gun from the hidden compartment in Cantoral's car. With this corroborating testimony, Mercado was able to implicate Cantoral in the dispute with the four men, despite the trial court's decision to prohibit him from testifying to Cantoral's statements.

At bottom, Mercado's excluded testimony that Cantoral was afraid of the four men and directed him to retrieve the gun would not have changed the fact that the evidence already generally demonstrated that Mercado thought there was reason to be afraid and Cantoral did not. Regardless of whether Mercado was permitted to testify about Cantoral's statements in order to directly contradict Cantoral's testimony, the fact that Mercado and Cantoral disagreed on this issue was plain for the jury to see. The jury was required to choose whose story to believe, and in light of the all the evidence before the jury, it is unlikely that Mercado's additional

testimony regarding Cantoral's statements would have altered the jury's calculus. The exclusion of part of Mercado's testimony did not prevent the jury from making a reliable judgment about guilt or innocence. Therefore, even if Mercado's habeas claim based on the trial court's hearsay ruling was not procedurally defaulted (which it is), it would fail on the merits.

### B.    Trial Counsel

Mercado argues that his trial counsel ineffectively argued that his testimony regarding Cantoral's statements should have been admitted. As discussed above, however, even if trial counsel had successfully argued that Mercado should have been permitted to testify that he believed Cantoral was scared, or that Cantoral told him to use the gun, there is not a "reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. To the extent trial counsel failed to zealously argue that Mercado's testimony should have been allowed, no prejudice arose from this failure. In these circumstances, it was entirely reasonable for the state courts to find that trial counsel's performance met *Strickland's* standard.

### III.    Ineffective Appellate Counsel

Prior to trial, the trial court asked the parties whether they wanted the court to ask prospective jurors about gangs. Cantoral's counsel stated that he did not have any such questions, and Mercado's counsel failed to respond. On its own initiative, the trial court questioned the first 14 potential jurors about any potential bias in this regard. Ten jurors were chosen from these 14. The trial court failed to

ask the next group of potential jurors about any gang bias they might have. The remaining two jurors were chosen from this group.

Mercado contends that his appellate counsel was ineffective for failing to argue that his trial counsel was ineffective for failing to ensure that the trial court questioned the entire venire about gang bias. Even assuming there is some degree of ineffectiveness on the part of Mercado's trial and appellate counsel in this regard (which the Court does not perceive there to be), Mercado did not suffer any cognizable prejudice from counsel's actions because "the Constitution does [not] require inquiries into [prospective jurors'] biases . . . against street gangs." *Gardner v. Barnett*, 199 F.3d 915, 921 (7th Cir. 1999); *see also id.* at 920-21 ("The litigants do not have a right to a have a particular question asked."). And even though Illinois law requires a trial court to permit defense counsel to question potential jurors about gang bias when evidence about gang-related activity will be an "integral" part of the trial, *see People v. Strain*, 742 N.E.2d 315, 320-21 (Ill. 2010), Illinois courts have not held that a failure to make such inquiries of potential jurors is a basis for a finding of ineffective assistance or an unfair trial. *See People v. Clark*, 2013 WL 4047653, at *12 (Ill. App. Ct. 1st Dist. Aug. 9, 2013). At least one court in this district has found that a failure to raise gang bias during voir dire does not create a meritorious issue on habeas review. *See Etherly v. Davis*, 836 F. Supp. 2d 641, 644-45 (N.D. Ill. 2011); *see also Cabot v. Butler*, 2016 WL 3459711, at *4 (N.D. Ill. June 23, 2016) ("Under a deferential review of defense counsel's actions, the state appellate court determined that trial counsel's failure to question the jurors on anti-

gang bias was 'strategic' and based in part on the concern that 'questioning the venire could result in highlighting the gang issue.'"). Moreover, there was substantial evidence of Mercado's guilt aside from any evidence related to gangs— i.e., Mercado admitted firing the gun. There is no reason to believe that but for the failure to root out anti-gang bias, Mercado would have received a different verdict. *See Williams v. Shaw*, 2006 WL 3743185, at *10 (N.D. Ill. Dec. 15, 2006) ("The nature of the evidence in this case, moreover, does not support a reasonable probability that not questioning the venire about gang bias affected the outcome of the trial."). Therefore, this claim is denied.

## IV. Certificate of Appealability

Lastly, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2). Rule 11(a) of the Rules Governing § 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *See Gonzalez v. Thaler*, 132 S. Ct. 641, 649 n.5 (2012). To obtain a certificate of appealability, a habeas petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This demonstration "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000); *see also Lavin v. Rednour,* 641 F.3d 830, 832 (7th Cir. 2011). Here, the Court's denial of Mercado's

petition rests on application of well-settled precedent. Accordingly, certification of any of Mercado's claims for appellate review is denied.

## Conclusion

For the foregoing reasons, Mercado's petition, R. 1; R. 6, is denied. The Court also declines to issue a certificate of appealability for any of the claims in the petition.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: December 15, 2016